FILED

97 SEP 23 PM 3: 53

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 2 3 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:                              } Bankruptcy Case No. 94-02369
                                    } Chapter 7 Proceeding
ALASIL CO., INC.,                   }
                                    }
    Debtor                        }
_____ }
                                    }
MAX C. POPE, as Trustee of          }
the Estate of Alasil, Co.,          }
Inc.,                               }
                                    }
    Appellant                     }
                                    } CIVIL ACTION NO.
    vs.                           }
                                    } CV-97-AR-1410-S
LEVAND STEEL AND SUPPLY,            }
INC., et al.,                       }
                                    }
    Appellee

## MEMORANDUM OPINION

This court has before it an appeal by Max C. Pope ("Trustee"), trustee for the estate of Alasil Company, Inc. ("Alasil"), debtor in a bankruptcy action, from the order of the Bankruptcy Court for the Northern District of Alabama rendering a judgment for creditor, Levand Steel and Supply, Inc. ("Levand"). The bankruptcy court held: (1) that Alasil received reasonably equivalent value in exchange for allegedly fraudulent transfers Alasil made to Levand on debts Alasil assumed from a third party, Alabama Silicon, Inc. ("Alabama Silicon"); and (2) that Levand

gave new value subsequent to certain other allegedly preferential transfers made by Alasil as payment on its own debts to Levand. This court's jurisdiction arises from 28 U.S.C. § 158(a).

## I. *Procedural History*

Alasil filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 22, 1994. On March 25, 1995, Alasil's Trustee filed a complaint against Levand to recover two sets of payments Alasil had made to Levand. The Trustee asserted that one set of payments, totaling $61,604.83, constituted fraudulent transfers pursuant to 11 U.S.C. § 548(a)(2). (Pl. Ex. B-1, B-3, B-4, B-6, B-7). Alasil made these payments in accordance with the terms of a contract it had with Alabama Silicon in which Alasil assumed various debts of Alabama Silicon in exchange for a lease of Alabama Silicon's manufacturing plant. The Trustee also asserted that payments totaling $60,945.47 that Alasil made on its own debt to Levand constituted preferences that were avoidable pursuant to 11 U.S.C. § 547(b). (Pl. Ex. B-8, B-9, B-10).

On December 10, 1996, the Bankruptcy Court, Honorable Tamara O. Mitchell sitting, tried the adversarial proceeding. On January 13, 1997, Judge Mitchell entered her memorandum opinion, order, and judgment denying the relief sought by the Trustee.

Judge Mitchell held that, because Alasil received satisfaction of its debt to a third party, Alabama Silicon, in exchange for the allegedly fraudulent transfers to Levand, Alasil received reasonably equivalent value for the transfers. As such, she concluded that the transfers were not fraudulent pursuant to 11 U.S.C. § 548(a)(2)(A)[1]. Judge Mitchell also held that, because Levand satisfied the "new value" exception of 11 U.S.C. § 547(c)(4)[2], the payments Alasil made on its own debt to Levand were not preferential. The Trustee took a timely appeal to this

---

[1] In pertinent part, 11 U.S.C. § 548(a)(2)(A) provides:

(a) The trustee may avoid any transfers of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily

\*\*\*

(2)(A) received less than reasonably equivalent value in exchange for such transfer or obligation; and

    (B)(I) was insolvent on the date that such transfer was made or such obligation incurred, or became insolvent as a result of such transfer or obligation [.]


[2] In pertinent part, 11 U.S.C. § 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer

    (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor

        (A) not secured by an otherwise avoidable security interest; and

        (B) on account of which new value the debtor did not make an otherwise avoidable transfer to or for the benefit of such creditor [.]

3

court from the Bankruptcy Court's judgment on January 23, 1997.

## II. *Pertinent Additional Facts*

On September 23, 1993, Alasil entered into an agreement ("the Agreement") with Alabama Silicon. In effect, the Agreement leased Alabama Silicon's Bessemer, Alabama, manufacturing plant to Alasil for three years. Under the Agreement Alasil would have possession of the plant's five buildings, including "all fixtures, equipment, and machinery of any nature." Alasil could use the plant for the "manufacturing, producing, [and] selling" of ferroalloy and metallurgical products. Alasil paid for the lease by agreeing to assume certain obligations belonging to Alabama Silicon, including a commercial debt owed to SouthTrust Bank and debts to "various creditors in the sum of $156,975." (Pl. Ex. H-4-3; R7 at 15). Under the Agreement, if Alasil paid off all these debts within three years, then it would obtain the option to purchase the manufacturing facility for $1.00.

One of the debts assumed by Alasil was a debt of $97,918.42 that Alabama Silicon owed to Levand. (R7 at 52). Levand was virtually the sole supplier of a component, called a steel turning, that was essential to Alasil's manufacturing process. After Alasil began operations, it contacted Levand about purchasing steel turnings. Levand agreed to supply Alasil with

4

the component on the condition that it continued to service the outstanding debt of Alabama Silicon. (R7 at 53-55). Alasil made payments to Levand on Alabama Silicon's outstanding debt up until the time it filed for bankruptcy in April, 1994. Levand, on the other hand, sold steel turnings to Alasil until Alasil filed for bankruptcy.

### III. *Standard of Review*

A bankruptcy court's conclusions of law are subject to *de novo* review by the district court. *See* In Re G.S.F. Corp., 938 F.2d 1467 (1st Cir. 1991); In re Daniels-Head Assocs., 819 F.2d 914 (9th Cir. 1987). The district court should not set aside the bankruptcy court's findings of fact unless clearly erroneous. *See* Bankruptcy Rule 8013.

### IV. *Analysis*

As noted earlier, the Trustee claims that, pursuant to 11 U.S.C. §§ 547 and 548, several payments made by Alasil to Levand were either preferential or fraudulent. In essence, the Trustee now argues that the Bankruptcy Court committed the following errors in refusing to allow him to avoid those payments:

(1) by holding that Levand had satisfied the elements of the "new value" affirmative defense under 11 U.S.C. §

5

>>547(c)(4) despite insufficient evidence; and
>
>(2) by holding that Alasil received reasonably equivalent value for the payments it made to Levand on Alabama Silicon's debt.

The court addresses each of the Trustee's arguments in turn.

### A. *Preferential Transfers*

In the adversary proceeding, the Bankruptcy Court concluded that the Trustee had established the *prima facie* case[3] necessary to recover payments Alasil made on its own debt to Levand as avoidable preferences. (Mem. Op. at 5). Nevertheless, because Levand proved that it met the elements of the "new value" affirmative defense under § 547(c)(4),[4] the court held that these payments were not preferential. On appeal, the Trustee argues that the Bankruptcy Court erred in this conclusion because the evidence on this point was insufficient. Specifically, he complains that the evidence did not demonstrate that the "new

---

[3] The evidence revealed that: (1) Alasil made payments on account of its antecedent debt to Levand within 90 days of the filing of the petition; (2) Levand received more from these payments than it would have received under a disbursement from the Trustee; and (3) Alasil was insolvent at the time the transfers were made. *See* R7 at 25-28; R7 at 40-42.

[4] To satisfy the requirements of the "new value" affirmative defense, a specific order of events must take place: (1) the creditor must receive a transfer that is otherwise avoidable as a preference under § 547(b); (2) after receiving the preference, said creditor must advance additional credit to the debtor on an unsecured basis; and, (3) as of the date of the petition, this additional unsecured credit advanced to the debtor must be either partially or entirely unpaid. *See* 5 *Collier on Bankruptcy* ¶ 547.04[4] (1997).

6

value," which all parties appear to agree was <u>shipped</u> to Alasil, was also <u>received</u> by Alasil.

To establish its new value defense, Levand offered into evidence ledger entries that showed the dates that Levand shipped goods to Alasil, the amounts of those shipments, and the dates Levand received payments from Alasil. (Def. Ex.1). Levand also offered the testimony of Cindy Bayles, the Levand employee responsible for accounts receivable. Ms. Bayles testified that she prepared the ledger entries as a part of her duties at Levand. She also testified that the ledger entries accurately reflected the business transacted between Alasil and Levand. (R7 at 58-59).

This court concludes that the evidence presented on this point provides a more than adequate basis from which the Bankruptcy Court, as fact-finder, could reasonably infer that Alasil did, in fact, receive the goods shipped by Levand. As such, the Bankruptcy Court's implicit finding that the evidence supported Levand's § 547(c)(4) defense was not clearly erroneous. This conclusion is particularly sound when one considers the fact that the Trustee did nothing to cast any doubt on Ms. Bayles' credibility or the accuracy of the ledger entries. He did not elect to cross-examine Ms. Bayles or to offer any rebuttal evidence in response to her testimony or the ledger entries. (R7

7

at 60). Therefore, the Trustee's complaint regarding the bankruptcy court's findings with respect to Levand's § 547(c)(4) affirmative defense is lacking in merit.

### B. *Fraudulent Transfers*

The Bankruptcy Court concluded that the payments that Alasil made to Levand on the outstanding debt of Alabama Silicon were not fraudulent transfers under § 548(a)(2) because Alasil received reasonably equivalent value in exchange for these payments. (Mem. Op. at 3-4). According to the Bankruptcy Court, because the Agreement required Alasil to assume certain debts of Alabama Silicon as its consideration, the Agreement created a debt from Alasil to Alabama Silicon. Therefore, each time Alasil paid Levand on the outstanding Alabama Silicon debt, it received reasonably equivalent value from Alabama Silicon in the form of an equal amount of debt relief. The Trustee argues that this finding of reasonably equivalent value is erroneous. In particular, he complains that no " reasonably equivalent value can be found based in the initial transfer between Alabama Silicon and Alasil as no evidence was presented on this point." (Appellant's Brief at 27).

It is well-settled that "'[w]hether fair consideration has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed to the trier of

8

facts.'" In re Chase & Sanborn Corp., 904 F.2d 588, 593 (11th Cir. 1990) (quoting Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 829-30 (5th Cir. 1959)) (alteration in original). Moreover, "[t]he burden of proving lack of 'reasonably equivalent value' under 11 U.S.C.A. § 548(a)(2)(A) rests on the trustee challenging the transfer." Id. at 593-94. For the following reasons, the court finds that the Trustee did not carry his burden of proving a lack of reasonably equivalent value and concludes that the Bankruptcy Court's findings on this point were not clearly erroneous.

Initially, the Trustee argues that Alasil did not receive reasonably equivalent value from the payments it made to Levand on the outstanding Alabama Silicon debt. He contends that the Agreement was a sham transaction that did not truly obligate Alasil to assume the debts of Alabama Silicon. In support of his contention, the Trustee emphasizes that, because the same person, Enrique Gomez Palacio, controlled both Alasil and Alabama Silicon, the Agreement was not an arms-length transaction. (Appellant's Brief at 16-17).

This argument is unconvincing. Nothing in the record indicates that the Agreement was not negotiated at arms-length. As noted earlier, in exchange for assuming certain obligations of Alabama Silicon, Alasil received use of the going concern and an

9

option to purchase it for $1.00. Likewise, nothing in the record indicates that, after entering the Agreement, Alasil did not, in fact, become obligated on the Alabama Silicon debts that it assumed. The fact that the same person controlled both companies does not, without more, lead to the conclusion that the Agreement was a sham transaction, and the authority cited by the Trustee on this point is inapposite because it deals with: (1) a § 548(a)(1) claim; and (2) obligations of a parent corporation assumed by a wholly-owned subsidiary, which Alasil is not. Moreover, there is ample authority supporting the bankruptcy court's conclusion. *See, e.g.,* In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479 (4th Cir. 1992); Rubin v. Manufacturers Hanover Trust, 661 F.2d 979 (2d Cir. 1981); In re Butcher, 51 B.R. 61 (E.D. Tenn. 1985) (finding debtor received reasonably equivalent value where transfer to creditor discharged debt to third party). Therefore, absent some greater showing that the Agreement was a sham, the court cannot find that the Bankruptcy Court clearly erred in finding that Alasil received reasonably equivalent value for these payments to Levand.

 The Trustee also complains that the Bankruptcy Court erred in allowing Levand to argue a reasonably equivalent value defense in its summation when no evidence of it had been raised during the earlier phase of the adversary proceeding. This argument is

10

without merit for two reasons. First, contrary to the Trustee's contention, evidence of reasonably equivalent value had been introduced earlier in the proceeding. The Trustee introduced such evidence himself when he submitted the Agreement into evidence as Plaintiff's Exhibit H-4-3. At a minimum, the Agreement created an inference that Alasil had received reasonably equivalent value for in the challenged transfers in the form of debt relief. Second, he did not object to Levand's summation. Consequently, the Trustee cannot now complain that such evidence was improperly raised or that he did not have an adequate chance to respond to it.

Finally, the Trustee claims that the Bankruptcy Court committed error when it relied on its decision regarding the issue of reasonably equivalent value in another, related adversary proceeding. He claims that it was improper for the Bankruptcy Court to rely on findings it made in Pope v. Midwest Carbide Corp., A.P. 95-00209, to decide the instant case. The Trustee either misunderstands or misstates the Bankruptcy Court's opinion. Nothing in the Bankruptcy Court's opinion suggests that it relied on its findings in Midwest Carbide to make its decision here. Rather, the Bankruptcy Court merely observed that both cases present the same facts regarding reasonably equivalent value. The Bankruptcy Court then used the language from its

11

opinion in <u>Midwest Carbide</u> to illustrate the rationale for its decision here. This court has employed the same technique many times. Obviously, it does not constitute error for a court to be consistent in its reasoning when addressing similar facts and issues. The Trustee's argument on this, his last, point is not well taken.

## Conclusion

Based on the foregoing, the court hereby finds that the decision of the Bankruptcy Court is due to be affirmed and will enter a separate and appropriate order of affirmance.

DONE this 23rd day of September, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE